352 A.2d 235

COMMONWEALTH of Pennsylvania, By Israel
Packel, Attorney General, Plaintiff,

v.

Eugene J. ZIOMEK.

Commonwealth Court of Pennsylvania.

Heard Nov. 24, 1975.

Decided Jan. 8, 1976.

Publication Ordered July 14, 1992.

Allen C. Warshaw, Deputy Atty. Gen., Dept. of Justice, Harrisburg, for plaintiff.

Joseph J. Gale, Wilkes–Barre, for defendant.

KRAMER, Judge.

This matter comes within this Court's original jurisdiction. This opinion covers that portion of the case involving a motion, as amended, filed by the Commonwealth of Pennsylvania for an adjudication that Eugene J. Ziomek is in contempt for violations of preliminary and permanent injunctions issued by this court, together with a motion for the imposition of sanctions.

To provide an understanding of the order which follows, the following summary of the pertinent facts and procedure is set forth. On February 1, 1973, the Commonwealth filed a complaint in equity against Ziomek under the provisions of the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. § 201–1 et seq., seeking to enjoin Ziomek from alleged enumerated violations of that Act. In the complaint it was

alleged that Ziomek was "fraudulently, unfairly and deceptively" offering services in connection with applications for "black lung benefits". After a hearing, this Court issued a preliminary injunction order on February 21, 1973, and thereafter, on November 13, 1974, issued a permanent injunction order. The wording of these two orders was almost identical, and in the latter Ziomek was enjoined and restrained from:

"1. soliciting clients for an engaging in the practice of distributing, preparing and expending applications in the Bureau of Occupational Injury and Disease Compensation (formerly Workmen's Compensation Bureau) of the Department of Labor and Industry of this Commonwealth for benefits on behalf of claimants under the Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. § 1201 et seq.

2. soliciting clients for and engaging in the practice of distributing, preparing and expediting applications to the Social Security Administration of the Federal Government for benefits on behalf of claimants under the Coal Mines Health and Safety Act, Subchapter IV, Pub.L. 91–173, December 30, 1969, 83 Stat. 792, *as amended*, 30 U.S.C. § 901 et seq.

3. engaging in the practice of representing claimants at various stages of processing said federal and state applications;

4. concealing or dissipating in any way any money now in his possession or subject to his control which defendant [Ziomek] has received or receives in the future as a result of defendant's 'black lung' practice."

No appeal was taken from either of these two orders. On April 4, 1975, the Commonwealth filed a petition for a rule to show cause why Ziomek should not be held in contempt for violation of this Court's injunctions. The petition was later expanded by amendment. On April 28, 1975, the matter was called for hearing, but Ziomek did not appear due to illness, and the matter was continued without the taking of any testimony. It was rescheduled for hearing on

June 10, 1975, and once again, Ziomek did not appear for the same reason. Upon inquiry by the Court, through counsel for both the Commonwealth and Ziomek, it was determined that Ziomek had been a patient in a hospital and that Ziomek was advised by his physician not to travel to Harrisburg for a hearing. Thereafter, to accommodate Ziomek, this Court, on October 22, 1975, filed an order rescheduling the hearing for November 24, 1975, in a courtroom of the Court of Common Pleas of Luzerne County in Wilkes–Barre. Ziomek appeared at this hearing. At every hearing held in this matter, counsel for Ziomek was present.

At the June 10, 1975, and November 24, 1975, hearings, at which the Commonwealth presented testimony and evidence in support of its contempt motions, counsel for Ziomek was provided the opportunity to cross-examine all of the Commonwealth witnesses. At the November 24 hearing, Ziomek took the witness stand when called as for cross-examination by the Commonwealth for examination into matters stipulated by both counsel. At the conclusion of the Commonwealth's case, Ziomek offered no witnesses, testimony or evidence in his defense.

## FINDINGS OF FACT

Based upon the testimony and evidence received at the June 10, 1975, and the November 24, 1975, hearings, and upon the single deposition filed, the Court finds:

1. That in violation of this Court's preliminary and permanent injunctions, noted above, Ziomek received payment from the following claimants in the amounts stated:

a. Anna Raishkowski: $2,157 in March, April and June of 1973.

b. Helen Barbara Cherneski: $800 in November of 1973.

c. Mary Ondusko: $1,177.71 in October of 1974.

d. Frank Zielecki: $1,100 in April of 1975.

e. Louis Brossi: $1,100 in June and July of 1975.

f. Stanley Zielecki: $5,900 during the period from August to October of 1975.

g.   Erma Zubris: $1,000 in October of 1975.

h.   Joseph Zielecki: $2,550 in October of 1975.

2.   In violation of this Court's permanent injunction, Ziomek requested $750 from John Hmelak in May 1975, for the purpose of obtaining black lung benefits for Hmelak.   Hmelak did not pay any monies to Ziomek.

3.   Although the Court finds that Anna Cirko paid Ziomek $500 for the purpose of his obtaining black lung benefits for her, the Commonwealth did not prove when the payment was made.

4.   Ziomek used the alias "John Novak" in several of the contacts or negotiations which were in violation of this Court's injunctive orders, and utilized the services and facilities of Arthur H. Cragel and Cragel Tire Sales in his operation in violation of this Court's orders.

5.   On several occasions Ziomek refused to give receipts for funds received from the claimants.

6.   When receiving payments from the claimants, Ziomek insisted on receiving cash, or checks made out to "cash".

7.   In receiving payments from the claimants, Ziomek represented to them that he was able to expedite or otherwise obtain "black lung" benefits for them.

8.   None of the claimants noted in these findings ever received any benefits from any governmental office through the efforts of Ziomek.

9.   Ziomek had notice of and was fully aware of the preliminary and permanent injunction orders of this Court prior to all of the violations noted above.

## CONCLUSIONS OF LAW

1.   Ziomek is subject to the jurisdiction of this Court.

2.   After a review of the testimony and the applicable law, the Court concludes that Ziomek, with knowledge of the existence of this Court's said preliminary and permanent injunctions, knowingly and intentionally violated them.

3.   As a result of the violations of this Court's injunctive orders, Ziomek is in contempt and subject to sanction.

## SUMMARY

■   The purpose of the General Assembly in passing the Unfair Trade Practices and Consumer Protection Law was to protect citizens from unfair or deceptive practices, and the Legislature granted to the Attorney General the power to bring an action in the name of the Commonwealth for injunctive relief to protect the individual citizens who are the prey of unscrupulous persons.  This Court was given jurisdiction to grant that relief; and its duty is to enforce its injunctive orders.  In all of the instances presented in this case, the victims were claimants who, in their own right, or as widows of workers, e.g., coal miners, believed they possessed legitimate claims for "black lung", social security, or Veterans Administration benefits.  Ziomek has seized upon this situation and held himself out as one who could cut through governmental red tape to obtain benefits in a shorter period of time.

Most of his victims were persons who found themselves in an impecunious position in life.  Some of them appeared to the Court to be desperate for income they believed was justly due them.  Some had to borrow money to pay Ziomek.  Some utilized their small savings and gave it all to Ziomek.  Ziomek now seems to contend through the arguments of his counsel that he has not been involved in any improper acts;  but that is not the point of this case in its present status.  The point is that he violated the injunctive orders of this Court.  If he believed that he should not have been enjoined, he should have appealed from the injunctive orders, and this he did not do.

■   It is now the duty of this Court to coerce compliance with its injunctive orders.  As this Court views the case in its present posture, the dominant purpose of the Court is not to vindicate the dignity and authority of the Court through a punitive measure.  Rather, the dominant purpose of the Court is remedial and intended to coerce compliance with its orders and to compensate those persons who have sustained calculable losses through Ziomek's contumacious

conduct. As a result, the matter before us is one of civil contempt and not criminal contempt.

The Commonwealth had the burden of proving by a preponderance of the evidence that Ziomek violated this Court's order. A fair reading of the record permits the Court to conclude that the Commonwealth has met its burden. All of Ziomek's due process rights have been zealously protected by his counsel and this Court. Ziomek had adequate notice and the opportunity to cross-examine all of the witnesses and to defend himself.

The Court does not relish the prospect of imposing sanctions on Ziomek, and would much prefer that the policy of the law be accomplished by voluntary compliance with this Court's orders. Unfortunately, Ziomek, through a deliberate course of conduct, has left the Court with no alternative but to invoke its inherent power to force compliance. *Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 (1968). The only question remaining is the method by which this Court should coerce Ziomek into compliance with the orders.

It appears that the only reasonable way to carry out a remedial purpose is to impose a compensatory civil fine, payable to those individuals who have been the direct victims of Ziomek's violations. There is ample authority for the imposition of such a sanction in proper circumstances. *Bata v. Central Penn. National Bank,* 448 Pa. 355, 293 A.2d 343 (1972); *Brocker, supra; Scranton City v. Peoples Coal Co.,* 274 Pa. 63, 117 A. 673 (1922). In the instant case, the aggrieved individuals are easily identifiable, as are the specific amounts lost by virtue of Ziomek's misconduct.

It should be made clear that the remedial fines imposed by the following order are separate and distinct from the civil penalties assessed under the Act, and are assessed solely as a result of Ziomek's contumacious conduct *after* the issuance of this Court's injunctive orders.

In light of the fact that Ziomek has demonstrated a repeated unwillingness to obey the orders of this Court, it is necessary that he be incarcerated until such time as he

demonstrates compliance with the sanctions imposed by the following order. *See In re Martorano,* 464 Pa. 66, 346 A.2d 22 (1975). The means to purge himself of contempt are readily available to Ziomek.

## ORDER

And now, this 8th day of January, 1976, the Court, after hearing, having found and concluded that Eugene J. Ziomek is in willful contempt of the orders of this Court dated February 21, 1973 and November 13, 1974, it is hereby ordered:

1. That the Pennsylvania State Police forthwith take into custody the body of Eugene J. Ziomek and transport him without delay to the nearest State correctional institution for incarceration upon the terms and conditions of this Order;

2. That the Superintendent of said State correctional institution receive Eugene J. Ziomek into custody and care for him as provided by law, for a maximum period of one hundred twenty (120) days, unless reduced by further order of this Court;

3. That Eugene J. Ziomek shall remain incarcerated in said State correctional institution for said period until he either pays, or gives assurance satisfactory to this Court that he will pay compensatory civil fines in the following sums to the following individuals:

| | | |
|---|---|---|
| a. | Anna Raishkowski: | $2,157.00 |
| b. | Helen Barbara Cherneski: | 800.00 |
| c. | Mary Cndusko: | 1,177.71 |
| d. | Frank Zielecki: | 1,100.00 |
| e. | Louis Brossi: | 1,100.00 |
| f. | Stanley Zielecki: | 5,900.00 |
| g. | Erma Zubris: | 1,000.00 |
| h. | Joseph Zielecki: | 2,550.00 |

In any event the Prothonotary of this Court is directed to enter judgment forthwith against Eugene J. Ziomek and in favor of each of the above-named claimants in the respective amounts shown;

4. That, pursuant to provisions of the Unfair Trade Practices and Consumer Protection Law, Act of December

17, 1968, P.L. 1224, *as amended,* 73 P.S. § 201–1 et seq., a civil penalty of $5,000.00 is hereby assessed and imposed against Eugene J. Ziomek, and the Prothonotary of this Court is directed to enter judgment in favor of the Commonwealth of Pennsylvania against Eugene J. Ziomek in said amount as a result of Ziomek's violations of this Court's orders of February 21, 1973 and November 13, 1974;

5. That the amounts payable under paragraph three of this Order are deemed to be separate and distinct from the statutory civil penalty assessed in paragraph four of this Order, the payment of said civil penalty not being a part of the condition for release from incarceration;

6. All costs to be paid by Eugene J. Ziomek;

7. All compensatory fines and the civil fine shall be paid through the Prothonotary of the Commonwealth Court of Pennsylvania, 6th Floor, South Office Building, Harrisburg, Pennsylvania;

8. Within fifteen (15) days from the date hereof, Eugene J. Ziomek shall file with this Court a complete current financial statement disclosing all assets, whether jointly or severally owned and whether free or encumbered.