David J. MEYER, Dallas Berry, Charles J. Brown, Jeremy Lee Fox, Martin Gorecki, Anthony J. Hollibaugh, Lisa L. Salyers, Rochell Sykes, Joseph W. Vucick, David L. Wigley, Dennis W. Woodley, Chris Mack and Tammy Muslo

v.

COMMUNITY COLLEGE OF
BEAVER COUNTY,
Appellant.

Commonwealth Court of Pennsylvania.

Argued April 6, 2011.
Decided Oct. 27, 2011.

Diego Correa, Pittsburgh, for appellant.

John P. Liekar, Jr., Pittsburgh, for appellee Dallas Berry.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge SIMPSON.

This first of two related interlocutory appeals by permission returns to us after our Supreme Court vacated our prior decision in *Meyer v. Community College of Beaver County*, 965 A.2d 406 (Pa.Cmwlth. 2009) (*en banc*) and remanded the case to us. In doing so, the Supreme Court determined that the part of the Judicial Code commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act) [1] does not grant immunity to a local agency from *all* statutory causes of action. *See Meyer v. Cmty. Coll. of Beaver County*, 606 Pa. 539, 2 A.3d 499 (2010) (*Meyer II*). The Court instructed us to consider: 1) whether the Community College is a "person" as defined in the Unfair Trade Practices and Consumer Protection Law (CPL) [2] and therefore subject to suit under that statute; and, 2) whether the Community College is immune under the Tort Claims Act because the CPL claims raised against it sound in tort.

1. 42 Pa.C.S. §§ 8541–42.

2. Act of December 16, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201.1–201–9.3.

3. Plaintiffs are David J. Meyer, Dallas Berry, Charles J. Brown, Jeremy Lee Fox, Martin Gorecki, Anthony J. Hollibaugh, Lisa L. Salyers, Rochell Sykes, Joseph W. Vucick, David L. Wigley, Dennis W. Woodley, Chris Mack and Tammy Muslo. This appeal was argued seriately with *Community College of Beaver County v. Barr*, 31 A.3d 994 (Pa.Cmwlth., No.

Generally, the Community College appeals an interlocutory order of the Court of Common Pleas of Beaver County (trial court) denying its motion for partial summary judgment. A group of former students (Plaintiffs) [3] enrolled in the Community College's police technology program (the Academy) during the 2001–02 academic year, brought a civil action after the program lost its school certification under the Municipal Police Officers Education and Training Act (Training Act), 53 Pa. C.S. §§ 2161–70, informally known as "Act 120." In their complaints, Plaintiffs allege breach of contract and breach of warranty, and various unfair or deceptive acts as defined in the CPL.

## I. Pleadings

In May 2002, before Plaintiffs completed the Academy's course of study, the Pennsylvania Municipal Police Officers' Education and Training Commission (Training Commission) suspended the Academy's Act 120 certification. The Training Commission based the suspension on numerous violations. The Training Commission officially revoked the Academy's Act 120 certification in August 2002.

Thereafter, Plaintiffs filed a complaint against the Community College that alleged as follows. In its 2000–01 [4] course catalog, the College expressly represented the Academy to be a Training Commission certified course of study. These express

1142 C.D. 2008, filed October 27, 2011). The only significant difference between the two cases is Plaintiffs here completed one half of their course of study; the *Barr* plaintiffs completed virtually the entire course of study.

4. Although Plaintiffs attended the Academy during the 2001–02 school year, the College provided them with 2000–01 catalogs. The College did not receive its 2001–02 catalogs until October 2001. *See* App. to the College's Br. in Supp. of Mot. for Summ. J., Tab 26 (Dep. of Harriet Ann Wallace at 3).

representations were made to induce, and did induce, Plaintiffs to enroll in the Academy. Plaintiffs paid tuition, attended the required courses and took examinations. Plaintiffs raised causes of action for breach of contract, breach of warranty, violations of the CPL, and violations of other statutes.

The Community College filed preliminary objections, only some of which are relevant now. In addition to issues regarding whether it is subject to liability under the CPL and whether it is immune from statutory-based claims, the Community College challenged the sufficiency of averments of fraud.

As pertinent to the current discussion, the trial court allowed CPL claims sounding in contract to proceed; however, the trial court sustained objections to all claims sounding in fraud, including CPL claims, because the averments did not establish scienter on the part of the Community College.

Plaintiffs filed an amended complaint. They repeated their previous claims for breach of contract and breach of warranty. As to claims under the CPL, they removed averments of fraudulent conduct, but they retained averments that conduct was unfair and deceptive. This pleading will be discussed below. Plaintiffs alleged substantial economic losses as a result of the Community College's violations of the CPL. They also sought treble damages and an award of costs and attorney fees under Section 9.2 of the CPL.[5]

A second round of preliminary objections was filed. Relevant now, the Community College challenged Plaintiffs'

pleading of misrepresentations, asserting the averments reintroduced CPL claims sounding in fraud, contrary to the trial court's ruling on the first set of preliminary objections. Accepting Plaintiffs' arguments that the language sought to bolster breach of contract and warranty claims and not to plead a cause of action in fraud, the trial court overruled the objections.[6]

## II. Partial Summary Judgment

After the close of pleadings and discovery, the Community College filed a motion for partial summary judgment. Relevant to this appeal, the Community College argued the CPL does not apply to community colleges and, as a local agency, a community college is immune from CPL claims under 42 Pa.C.S. § 8541, part of the Tort Claims Act.

Ultimately, the trial court denied the Community College's motion for partial summary judgment. The trial court rejected the assertion the CPL does not apply to community colleges. It further rejected the immunity defense on the basis that some of Plaintiffs' CPL claims sound in contract, not in tort. In denying the motion for partial summary judgment, the trial court reasoned (with emphasis added):

> The party opposing a motion for summary judgment must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. *In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather*

---

5. Section 9.2 of the CPL was added by the Act of November 24, 1976, P.L. 1166, *as amended*, 73 P.S. § 201–9.2.

6. Thereafter, the Community College filed an answer and new matter denying Plaintiffs'

allegations. In its new matter, the Community College asserted various claims and defenses including failure to state a cause of action, immunity, and statute of limitations.

*to determine whether any such issues exist.*

Our courts have been reluctant to recognize claims of educational malpractice in the academic environment but they have recognized that a contract exists between a student and a college. *The courts have held that in general, the basic legal relationship between a student and a private university or college is contractual in nature. The catalogs, bulletins, circulars, and regulations of the institution made available to the matriculant become part of the contract. Questions of discipline, academic matters, and tuition and scholarship disputes have been addressed by courts and resolved on contract principles.* At the same time, however, courts have been reluctant to apply strict contract concepts to the unique relationship that exists between students and universities or colleges.

Trial Ct. Slip Op., 5/12/08, at 5, Reproduced Record (R.R.) at 258.

In response to the denial of its motion, the Community College filed a motion to amend the order to certify for an interlocutory appeal of the following two issues: whether the Community College is a "person" as defined in Section 2(2) of the CPL, 73 P.S. § 201–2(2); and, whether the Community College is immune to prosecution because the CPL sounds in tort and the Community College is immune to tort actions under the Tort Claims Act. The trial court granted the Community College's motion. This Court allowed the appeal.

### III.  *Meyer II*

After argument, an *en banc* panel of this Court reversed the trial court, holding that regardless of whether the Community College was a "person" under the CPL, it was immune from claims for statutory damages under the Tort Claims Act. The Supreme Court, however, permitted a discretionary appeal. Ultimately, it reversed and remanded, with direction.

The majority opinion was authored by Mr. Justice Saylor. The majority concluded that our application of the Tort Claims Act to statutory damages was not sustainable. The majority emphasized the main policy considerations historically underlying tort law, centered on injury to a person or property. *See Meyer II*, 606 Pa. at 544–45, 2 A.3d at 502. This was contrasted with the central focus of contract law, the protection of bargained-for expectations. *Id.* The Torts Claims Act was intended to apply to the former, not the latter. *Id.* Consequently, the Supreme Court held that governmental immunity does not extend to all statutory causes of action, regardless of whether they sound in tort or contract. *See id.* at 545–46, 2 A.3d at 503.

In a lengthy note responding to the concurring opinion, the majority presumed the first order of business on remand would be for this Court to undertake the threshold determination of whether the Legislature intended for the government to be subject to private actions under Section 9.2 of the CPL. *Id.* at 546 n. 6, 2 A.3d at 503 n. 6. The majority highlighted the Plaintiffs' argument referencing Commonwealth Court opinions holding that the Legislature did not intend to include governmental entities within a listing of persons and entities which might technically encompass them where it did not include the governmental entity expressly. *See, e.g., Huffman v. Borough of Millvale*, 139 Pa.Cmwlth. 349, 591 A.2d 1137 (1991); *see also Leonard v. Masterson*, 70 A.D.3d 697, 896 N.Y.S.2d 358 (N.Y.App.Div.2010).

In her concurring opinion, Madame Justice Orie Melvin expressed her preference for directing this Court "to examine the pleadings on remand to determine whether

the [Plaintiffs'] claims satisfy the [CPL]. If sufficient facts have been pled, the Commonwealth Court should then ascertain whether the claims sound in tort or in contract and dispose of the matter accordingly." 606 Pa. at 549, 2 A.3d at 505. With these directives in mind, we analyze the issues.[7]

## IV. Issues

### A. "Person" Under CPL

#### 1. Contentions

The Community College first asserts it is not included in the CPL's definition of a "person" and thus not subject to prosecution under Section 9.2 of the CPL. Section 2(2) of the CPL, 73 P.S. § 201–2(2), defines a "person" as follows (with emphasis added):

> 'Person' means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, *and any other legal entities.*

Clearly, no form of government unit or public authority is expressly included in the definition. What is less clear is whether the phrase "any other legal entities" extends to public agencies.

Section 9.2(a) of the CPL, which deals with private actions for alleged violations of that statute, uses the defined term "person" as follows:

> (a) Any *person* who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any *person* of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recov-

er actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2(a) (emphasis added). Notably, this provision uses the term "person" to describe both a plaintiff and a defendant in a private action under the CPL.

The Community College contends that public subdivisions and municipal corporations are recognized as unique statutory entities and are afforded defenses based on that status. One such defense is the well-established prohibition against a presumption that a public entity is subject to suit without having been specifically identified within the statute.

The Community College relies on various Pennsylvania appellate court decisions for the proposition that unless specifically named, public entities are excluded from the reach of statutes even where "catchall" language is present. *E.g., In re Keifer,* 430 Pa. 491, 243 A.2d 336 (1968) (an established principle of statutory construction: an act does not deprive the Commonwealth of any prerogative, right, or property unless the Commonwealth is specifically named or the intention to include it is necessarily implied); *Hoffman v. City of Pittsburgh,* 365 Pa. 386, 75 A.2d 649 (1950) (applicability of statutes to public entities never presumed); *Huffman* (borough beyond reach of Wage and Payment

---

7. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion. *Kincel v. Dep't of Transp.,* 867 A.2d 758 (Pa. Cmwlth.2005).

Collection Law[8] notwithstanding broad definition of "employer"). It also relies on decisions from other states, including *Leonard.* The Community College asserts that based on this authority, we should apply the rule of statutory construction that the express mention of a specific matter in a general statute implies the exclusion of others not named. Thus, the absence of specific reference to public entities precludes the incorporation of the Community College into the definition of "person."

Further, the Community College cites various Pennsylvania statutes as evidence that the General Assembly knew how to specifically include public entities within "catch-all" provisions.[9] Had it been the intention of the General Assembly to do so with the CPL, it could have followed known patterns. Finally, the Community College seeks to distinguish a case upon which Plaintiffs rely, *TIG Specialty Insurance Co. v. Koken,* 855 A.2d 900 (Pa. Cmwlth.2004), because the special status of a public entity was not at issue.

In contrast, Plaintiffs assert that a "plain language" reading of the CPL definition of "person" leads to the. conclusion that it includes the Community College, which is a legal entity. Citing *TIG,* they argue that statutory construction rules in general, and the rule of *expressio unius est exclusio alterius* in particular, should not be applied where the words of a statute are clear and unambiguous.

Plaintiffs also contend that there is no rule of construction that would require the General Assembly to name community colleges in a statute in order to evince its intent to apply the statute to those entities. Many of the cases referenced by the Community College are inapplicable because they deal with the sovereign, the Commonwealth, and not with a local agency. Also, those cases make clear that the rule of construction was applied to protect the Commonwealth's rights and prerogatives from diminution, as by the application of a statute of limitations. Because application of the CPL to the Community College will not involve the Commonwealth as a party or the diminution of any right of the Commonwealth, the cases are inapposite. Plaintiffs also remind this Court of the reasoning which compelled the Supreme Court to abolish sovereign immunity.

Further, Plaintiffs contend there is no legislative intent to exclude community colleges from application of the CPL. Assuming that resort to rules of construction is appropriate, various rules support their position. Thus, although a court must assume that the General Assembly intends the entire statute to be effective, 1 Pa.C.S. § 1922(2), the Community College approach would render the definitional phrase "any other legal entities" ineffective. Also, cases require that the CPL be liberally construed to effectuate the legislative goal of consumer protection. *Com-*

---

8. Act of July 14, 1961, P.L. 114, *as amended,* 43 P.S. §§ 260.1–260.45.

9. Section 102(b) of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. § 780–102(b) (definition of "person" expressly includes "government or governmental subdivision or agency" in addition to "any other legal entity"); Section 911(h)(3) of the Crimes Code, 18 Pa.C.S. § 911(h)(3) (definition of "enterprise" specifically includes "le-

gitimate as well as illegitimate entities and governmental entities" in addition to "other legal entity" for purposes of corrupt organization sanctions); Section 103 of the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. § 6018.103 (definition of "person" specifically includes "municipal authority, Federal Government or agency, State institution and agency" as well as "any other legal entity whatsoever....").

*monwealth v. Percudani,* 844 A.2d 35 (Pa. Cmwlth.), *amended on reconsideration by,* 851 A.2d 987 (Pa.Cmwlth.2004). They assert it is unclear why, despite this rule, a community college which harmed consumers of educational services should obtain a judicially crafted exemption from the CPL.

Finally, Plaintiffs seek to distinguish *Huffman,* which involved the definition of "employer" under the Wage and Payment Collection Law, and the other statutory definitions upon which the Community College relies.

### 2. Discussion

#### a. Statutory Construction

The parties here advance competing interpretations regarding the meaning of "person" as defined in the CPL. Because the parties offer conflicting interpretations of the relevant statutory provision, the term is ambiguous. *See, e.g., Malt Beverage Distribs. Ass'n v. Pa. Liquor Control Bd.,* 601 Pa. 449, 974 A.2d 1144 (2009). (statute is ambiguous where parties offered conflicting, but plausible interpretations). "As in all cases where a latent ambiguity in [a] statute exists, we resort to the canons of statutory construction to discover the Legislature's intent." *Id.* at 463, 974 A.2d at 1153.

When statutory language is not explicit, the intention of the General Assembly may be ascertained by considering the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c)(3), (4), (6). Further, in ascertaining legislative intent, the Statutory Construction Act requires a presumption that "the General Assembly did not intend a result that is absurd or unreasonable" as well as a presumption

that "the General Assembly intends to favor the public interest as against any private interest." 1 Pa.C.S. § 1922(1), (5).

#### b. Dual Use of "Person"

■ The General Assembly's intent is revealed by a careful examination of the entire CPL. As noted above, the term "person" in Section 9.2 is used not just to refer to a defendant, such as the Community College here, but also to refer to a plaintiff. This dual use of the term is consistent throughout the CPL. *See, e.g.,* Section 4.1 of the CPL,[10] (where court issues permanent injunction under Section 4, court may direct that defendant to restore money or property "to any person in interest"); Section 9.1 of CPL,[11] (receiver may take into possession property of "person or persons for whom the receiver is appointed;" any "person" suffering damages may participate with general creditors).

Examining the context in which "person" is used throughout the CPL, we conclude that the General Assembly intended the term to have a uniform meaning. Thus, there is nothing in the way the General Assembly used the term to indicate it meant something different depending on whether it referred to a plaintiff or a defendant. Also, there is nothing in the way the General Assembly used the term to indicate it meant something different in each section of the CPL.

#### c. "Person" as Plaintiff/ Actions in the Public Interest

■ We first consider use of the term "person" to connote a plaintiff in an action based on violations of the CPL. Evaluating the consequences of a particular interpre-

---

**10.** Section 4.1 of the CPL was added by the Act of November 23, 1976, P.L. 1166, 73 P.S. § 201–4.1.

**11.** Section 9.1 of the CPL was added by the Act of November 23, 1976, P.L. 1166, 73 P.S. § 201–9.1.

tation, we observe that a construction under which a local agency [12] is not a plaintiff "person" results in the inability of local agencies to recover restoration under Section 4.1, to participate with general creditors under Section 9.1, and to bring suit and recover damages, treble damages, costs and attorneys fees under Section 9.2. Thus, local agencies harmed by violations of the CPL would have significantly fewer remedies than other legal entity plaintiffs. Concomitantly, those violating the CPL have more limited liability if a local agency is a victim. How such a construction is in the public interest is unclear.

Moreover, the absurdity of such a construction is most evident with regard to Sections 4,[13] and 4.1,[14] and 8(b) [15] of the CPL, all of which deal with suits in the public interest. Section 4 authorizes the Attorney General or district attorney to bring an action in the name of the Commonwealth to restrain practices in violation of the CPL where proceedings would

be in the public interest. Section 4.1 applies where such an injunction is entered, and it allows a court to also restore money or property "to any person in interest." Section 8(b) also applies to actions brought under Section 4 in the public interest, and it provides for recovery by the Commonwealth of civil penalties in certain circumstances. These provisions expressly authorize the Commonwealth to be a party plaintiff and to recover civil penalties in certain circumstances.

A construction under which a local agency is not a plaintiff "person" results in the inability of a local agency to recover past lost sums under Section 4.1. This is true even if suit brought in the public interest is successful and prospective injunctive relief is granted. In short, even where suit in the public interest is successful, a local agency would have no retrospective remedy, only a prospective remedy. Such a result is indefensible, clearly not in the public interest, and inconsistent with our

12. It is undisputed that the Community College is a local agency for purposes of governmental immunity. *Meyer II*, 606 Pa. at 542 n. 2, 2 A.3d at 500 n. 2.

13. Section 4 of the CPL, 73 P.S. § 201–4, provides in pertinent part:

Whenever the Attorney General … has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

14. Section 4.1 of the CPL, 73 P.S. § 201–4.1, provides in pertinent part:

Whenever any court issues a permanent injunction to restrain and prevent violations of this act as authorized in section 4 above, the court may in its discretion direct that the defendant or defendants restore to any person in interest any moneys or property,

real or personal, which may have been acquired by any means of any violation of this act, under terms and conditions to be established by the court.

15. Section 8(b) of the CPL, 73 P.S. § 201–8(b), provides in pertinent part:

(b) In any action brought under section 4 of this act, if the court finds that a person, firm or corporation is willfully using or has willfully used a method, act or practice declared unlawful by section 3 of this act, the Attorney General or the appropriate District Attorney, acting in the name of the Commonwealth of Pennsylvania, may recover, on behalf of the Commonwealth of Pennsylvania, a civil penalty of not exceeding one thousand dollars ($1,000) per violation, which civil penalty shall be in addition to other relief which may be granted under sections 4 and 4.1 of this act. Where the victim … is sixty years of age or older, the civil penalty shall not exceed three thousand dollars ($3,000) per violation, which penalty shall be in addition to other relief which may be granted under sections 2 and 4.1 of this act.

charge to liberally construe the CPL to achieve its objectives. *Meyer II,* 606 Pa. at 547–48, 2 A.3d at 504 (Orie Melvin, J., concurring opinion); *see also Percudani* (CPL should be liberally construed; purpose of CPL is to eliminate unfair or deceptive business practices).

#### d. "Person" as Defendant/ Liberal Construction

We now consider use of the term "person" to mean a defendant in a suit based on violations of the CPL. One way to protect the public fisc is to construe the CPL so that local agencies are not "persons" and therefore can never be defendants. As discussed above, however, such an overbroad prohibition absurdly limits the right of local agencies to recover as plaintiffs. Moreover, such a construction unnecessarily restricts the rights of ordinary consumers or other legal entities to recover against local agencies should agency practices be unfair or deceptive so as to violate the CPL. Such a construction is not consistent with our charge to liberally construe the CPL to achieve its objectives. *Id.*

A more targeted approach to protecting the public interest is to limit those circumstances in which a "person," can be liable. Indeed, the CPL contains express limitations on liability.

First, a "person" is only liable if it is engaged in trade or commerce, as those terms are defined. *See* Section 2(3) of the CPL, 73 P.S. § 201–2(3). This status filter operates to protect defendant "persons," including local agencies, from broad liability.

Second, Section 3 of the CPL, 73 P.S. § 201–3, contains specific exclusions from liability. The exclusions cover those who, in good faith and without knowledge of falsity or deceptive character, are involved in the broadcast or publication of an advertisement which may violate the CPL. Tellingly, the exclusions do not more broadly shield local agencies from liability.

Third, Section 9.2 of the CPL, addressing actions other than those brought in the public interest, limits liability on the basis of the purpose of the transaction. In particular, before a "person" can be liable as a defendant in such an action, the transaction must involve "personal, family or household purposes." *See Valley Forge Towers S. Condo. v. Ron–Ike Foam Insulators, Inc.,* 393 Pa.Super. 339, 574 A.2d 641 (1990), *aff'd,* 529 Pa. 512, 605 A.2d 798 (1992). Through this additional transaction-purpose filter, the General Assembly endeavored to focus recovery on consumer-based practices and to protect defendant "persons," including local agencies, from expansive liability.

Fourth, a careful review of Sections 4, 4.1, and 8(b) of the CPL, relating to suits brought in the public interest, supports our analysis. Thus, suits by the Attorney General or district attorney in the name of the Commonwealth must be based on a determination by an elected official that such a suit is in the public interest. *See Weinberg v. Sun Co., Inc.,* 565 Pa. 612, 777 A.2d 442 (2001). This determination is a prerequisite to injunctive relief under Section 4 (prospective), restorative relief under Section 4.1 (retrospective), and civil penalties under Section 8(b). We conclude that this additional "public interest" filter functions to protect all defendant "persons," including local agencies, from inappropriate suit.

In sum, considering the statute's dual use of the term "person" to mean both plaintiff and defendant, the provisions for suits in the public interest, the consequences of a construction in which the phrase "any other legal entities" does not include local agencies, and the existence of additional filters to protect all "persons,"

including local agencies, from overbroad liability, we conclude the General Assembly's use of the phrase "any other legal entities" in its definition of "person" is expansive enough to embrace local agencies.[16]

### e. Community College's Arguments

The Community College does not acknowledge the dual use issue, and it does not address use of the term "person" throughout the CPL. Also, the Community College does not address the import of provisions for suits in the public interest. Because the Community College does not contemplate the full implications of the construction for which it advocates, its contentions are not persuasive.

Also, given our analysis based on the terms and structure of the CPL, we specifically reject those arguments based on cases which do not involve this statute and those arguments based on unrelated statutes. In particular, we reject as inapplicable the argument based on *Kiefer*, *Hoffman*, and *Huffman*[17] that the applicability of statutes to public entities is never presumed, even where a broad statutory definition is involved. These cases and statutes do not involve the unique provisions of the CPL, especially those which permit suit in the public interest. Based on the provisions of the CPL and our charge to liberally construe the statute, we conclude

that local agencies are included among "any other legal entities" by necessary implication.

Further, we distinguish *Leonard*, which was referenced by our Supreme Court majority in *Meyer II*. *Leonard* involved a suit in mandamus seeking to compel a superintendent of highways to commence proceedings to declare a private road over land owned by a county. Thus, the petitioner sought a private taking of public land under the Highway Law. The Supreme Court, Appellate Division, determined:

> The Highway Law provisions at issue do not specifically or necessarily include governmental entities such as the County. Indeed, by providing for the payment of damages to a 'person or persons' through whose land the private road is to pass (Highway Law § 307), the Legislature evinced an intention not to provide for the taking of land owned by a governmental entity. It has long been the law ... that the term 'person' generally does not include a governmental entity ... unless a statutory definition expressly includes that governmental entity within the meaning of the term.

70 A.D.3d at 698, 896 N.Y.S.2d at 360 (citations omitted).

**16.** We decline to adopt the approach embraced by Judge Brobson in his dissenting opinion. While he posits that many public agency activities may satisfy the "trade or commerce" requirement of the CPL, he does not address the "transaction-purpose" requirement for actions under Section 9.2. Also, he does not address the most fundamental limitation on liability: that trade or commerce conduct must be "unfair or deceptive." *See* Section 3 of the CPL, 73 P.S. § 201–3. We see nothing in the language or structure of the CPL to suggest a legislative intent to insulate local agencies engaged in trade or commerce from responsibility for unfair or

deceptive practices which cause a loss to Pennsylvania consumers.

**17.** Although not controlling, we observe that the United States District Court for the Middle District of Pennsylvania declined to follow *Huffman* and the *expressio unius est exclusio alterius* rule; rather, the court predicted the Supreme Court of Pennsylvania would hold that the Wage Payment and Collection Law applies to municipal corporations. *See Carstetter v. Adams County Transit Auth.*, 2008 WL 2704600 (M.D.Pa.2008) at *31–32 (unpublished opinion).

Aside from the factual differences between *Leonard* and the current case, especially the obvious public interest at risk, there are such differences between the statutes as to call into question the application of that decision here. In particular, there is no indication that the phrase "person or persons" in the Highway Law was used to mean both petitioners and respondents. Also, the court did not discuss how provisions for Highway Law actions in the public interest were impacted by the construction of the term "person." Nor did the court allude to any standing rule of liberal construction to achieve the objectives of the Highway Law. In short, due to the language and structure of the CPL, there is reason to conclude that the phrase "any other legal entities" includes local agencies by necessary implication, while the language and structure of the Highway Law do not lead to that conclusion.

For the reasons discussed, we conclude that the Community College is a "person" as defined in the CPL. Therefore, no trial court error is evident on this issue.

### B. Immunity under Tort Claims Act

#### 1. Contentions

The Community College next asserts that as a public entity it is immune from tort actions under the Tort Claims Act, except for certain exceptions not relevant here. For several reasons, it asserts the CPL sounds in tort; accordingly, an action for violation of the CPL is a tort action to which immunity under the Tort Claims Act applies.

As to the standard by which to distinguish actions sounding in tort from actions sounding in contract, the Community College advocates several approaches. First, it suggests that for an action to sound in contract there must be an underlying enforceable contract. Where, as here, there is no underlying enforceable contract, the

claim cannot sound in contract and must therefore sound in tort. Moreover, courts recognize that attempts to circumvent the Torts Claim Act by reclassifying an action as sounding in contract are not sufficient to avoid immunity.

Citing *Matarazzo v. Millers Mutual Group, Inc.*, 927 A.2d 689 (Pa.Cmwlth. 2007) (application of Tort Claims Act to municipal authority despite attempts to raise contract claim; CPL not involved), the Community College suggests another approach to distinguishing between actions sounding in tort and actions sounding in contract. Under this approach, tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual agreements between the parties. *Id.* at 694. Because the CPL is intended to remedy a breach of social policy related to fraud and unfair and deceptive trade practices, suit for violation of the CPL provisions in question here sounds in tort.

As a third approach, the Community College offers the misfeasance/nonfeasance dichotomy discussed in *Yocca v. Pittsburgh Steelers Sports, Inc.*, 806 A.2d 936 (Pa. Cmwlth.2002), *rev'd on other grounds*, 578 Pa. 479, 854 A.2d 425 (2004) (class action by season ticket holders under CPL; preliminary objections). Under this approach, where, as here, there is misfeasance, the "gist" of the action sounds in tort.

Further, the Community College reminds us that judicial and statutory limitations to damages available against a public entity would be reversed by a decision against it. The Community College specifically refers to treble damages available under Section 9.2 of the CPL.

Finally, the Community College seeks to distinguish cases relied upon by Plaintiffs,

in particular *Weinberg v. Sun Company Inc.*, 740 A.2d 1152 (Pa.Super.1999), *affd. in part, rev'd in part,* 565 Pa. 612, 777 A.2d 442 (2001) (class certification under CPL), and *Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488 (1987) (appropriate limitations of action under CPL provisions).

In response, Plaintiffs contend that the Tort Claims Act does not apply to their claims. Claims under the CPL may sound in contract, warranty, tort, fraud and other common law forms of action. The trial court correctly determined that Plaintiffs' claims sound in contract or warranty. The claims are not based on general social obligations but on private agreements between the parties.

Plaintiffs also assail the Community College's argument that they attempt to plead contract claims as a way of avoiding immunity. In the process of disputing this argument, Plaintiffs seek to distinguish cases upon which the Community College relies, including *Matarazzo* and cases discussing the relationship between a student and a college.

Addressing the damages available under the CPL, Plaintiffs contend that statutory damages, including possible treble damages and attorneys' fees, do not transform contract claims into tort claims. The statutory damages are legislative remedies, not punitive damages.

Finally, Plaintiffs argue that the question of whether their claims sound in contract cannot be answered by reference to a social policy allegedly embodied in the CPL. In their discussion of this point, Plaintiffs reference the Supreme Court's decision in *Weinberg,* which addressed a private plaintiff's burden of proof in the context of class certification.

### 2. Discussion

■ In her concurring opinion, Madame Justice Orie Melvin encouraged this Court "to examine the pleadings on remand to determine whether the [Plaintiffs'] claims satisfy the CPL. If sufficient facts have been pled, the Commonwealth Court should ascertain whether the claims sound in tort or in contract and dispose of the matter accordingly." *Meyer II,* 606 Pa. at 549, 2 A.3d at 505. As to ascertaining whether the claims sound in tort or in contract, Mr. Justice Saylor, writing for the majority, reminded us that the central focus of contract law is the protection of bargained-for expectations. *Id.* at 544–45, 2 A.3d at 502.

In their amended complaint, Plaintiffs alleged the Community College violated the CPL in the following manner:

56. In connection with the sale of its educational services and collection of tuition, fees and costs related thereto, the College committed various unfair and deceptive acts and practices in violation of the CPL, including, but not limited to:

(a) Representing, warranting and guaranteeing in writing that the Academy was in compliance with Act 120 when in fact it was not;

(b) Representing that the Plaintiffs would be eligible for certification under Act 120 upon completion of the Academy, when they would not be eligible;

(c) Misrepresenting the nature and qualifications of the Academy;

(d) Making the material representations described in Paragraphs 3 through 51 of this Complaint; and

(e) Oppressing and abusing Plaintiffs by charging and collecting unauthorized and illegal fees, costs, expenses and tuition.

57. Each Plaintiff relied upon the various warranties and misrepresentations

of the College in entering their agreements with the College and in continuing to make payments to the College. 58. The College's unfair and deceptive conduct (a) constituted untrue representations of the approval, characteristics, certifications, sponsorships, affiliations, uses and benefits of the College's educational services; (b) constituted untrue representations that the Academy was of a particular standard or quality; (c) caused confusion and misunderstanding as to the Academy's certification and approval; (d) constituted a failure to comply with the terms of a written guarantee or warranty; and (e) constituted deceptive conduct which created a likelihood of confusion and misunderstanding—all within the meaning of [Section 3 of the CPL] and Sections 2(4)(ii), (iii), (v), (vii), (xiv) and (xxi) of the CPL]. Pls.' First Am. Compl. at 13, R.R. at 114. Thus, Plaintiffs allege conduct proscribed by the CPL as defined in Sections 2(4)(ii), (iii), (v), (vii), (xiv) and (xxi), 73 P.S. § 201–2(4)(ii), (iii), (v), (vii), (xiv), (xxi).[18] After careful review, we conclude that Plaintiffs aver sufficient facts to satisfy the CPL.

Moreover, we conclude that these averments sound in contract rather than tort. Clearly, the averments relate to the sale of educational services. Under these averments, the protection of bargained-for expectations is implicated.

Further, Plaintiffs brought an action under Section 9.2 of the CPL. As discussed elsewhere, such an action may be brought by a person "who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss...." 73 P.S. § 201–9.2. Thus, an action under Section 9.2 of the CPL must be transaction based. For this additional reason, we conclude Plaintiffs' action under the CPL sounds in contract.

Regarding the Community College's argument raising the specter of treble damages, no ruling is necessary at this time, for several reasons. First and foremost, the trial court did not address this issue in denying the motion for partial summary judgment. Second, "[Plaintiffs] are not sure to recover [treble] damages...." *See Meyer II*, 606 Pa. at 549, 2 A.3d at 505 (Orie Melvin, J., concurring opinion). The speculative nature of such recovery is highlighted by the trial court's decision on the first round of preliminary objections and the current pleadings. In particular, the trial court struck off claims for fraud

---

18. Section 2(4) of the CPL, 73 P.S. § 201–2(4), provides in relevant part:

(4) **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:

. . . .

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

. . . .

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

. . . .

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

. . . .

(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

. . . .

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

because "the element of fraud necessary to demonstrate scienter is not present in the allegations set forth in the Complaint." Trial Ct. Slip. Op., 5/16/2003, at 8, R.R. at 92. Also, Plaintiffs' amended complaint does not contain averments of foreknowledge or intent on the part of the Community College. For these reasons, there is no need to decide an issue which may never arise.

As a consequence of these conclusions, we hold that immunity under the Tort Claims Act does not apply to Plaintiffs' CPL claims. Therefore, we discern no error in the trial court's ruling on this issue.

## V. Conclusion

For all the foregoing reasons, we affirm the decision of the trial court denying the Community College's motion for partial summary judgment. The case is returned to the trial court.

### ORDER

**AND NOW,** this 27th day of October, 2011, the order of the Court of Common Pleas of Beaver County denying the Motion for Partial Summary Judgment is **AFFIRMED.**

Jurisdiction is relinquished.

## DISSENTING OPINION by Judge PELLEGRINI.

I respectfully dissent. Unlike the majority, I would hold that the Community College of Beaver County (Community College) is immune from suit because the action brought sounds in tort, not in contract. I also dissent because the majority holds that the Community College is engaged in "trade or commerce" as that term is used in the Unfair Trade Practices and

Consumer Protection Law (CPL).[1] Because that issue was not raised and briefed, I would not address that issue. Because the majority did, I would hold that the CPL does not apply as a governmental agency does not engage in the business of "trade or commerce" because a governmental agency only engages in the "business" of government.

A group of former students (Students) filed a civil action against the Community College for breach of contract and breach of warranty as well as various unfair or deceptive acts as defined in the CPL. In their complaint, the Students alleged that they had completed a substantial portion of the training when the Community College lost its certification under the governing statute as a result of decertification, the credits they earned could not be recognized elsewhere, and they incurred damages as a result. In *Meyer v. Community College of Beaver County*, 606 Pa. 539, 2 A.3d 499 (2010), reversing in part this Court, our Supreme Court held that governmental immunity created by the Political Subdivision Torts Claim Act[2] does not extend to all statutory causes of action, regardless of whether they sound in tort or contract. The Supreme Court then remanded the matter to us to address issues previously raised in the Community Colleges' partial motion for summary judgment but not addressed in our opinion.

While it raised many issues in its partial motion for summary judgment, the Community College only addressed two of those issues in its brief. First, the Community College argued that it was not subject to liability under the CPL because it is not a "person" within the definition of Section 2.2 of the CPL so as to impose

---

1. Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. §§ 201-1—201-9.3.

2. 42 Pa.C.S. §§ 8541–8541.

liability under Section 9.2(a).[3] I agree with that portion of the majority's opinion that the Community College is a "person" for the purpose of imposing liability under the CPL if it meets the other preconditions for liability under the CPL.

The second issue the Community College raised in its brief is that the Students' claims sound in tort, not contract. It argues that a course catalog does not create a contract between the parties upon which to base a contract action. Second, representations made by the Community College staff members cannot create a contractual obligation. Based on an examination of the complaint, the majority finds that those allegations the Students have pled sound in contract, not tort. I disagree with the majority because I do not believe that the Students have made out a contractual claim and would dismiss the action.

Insofar as the Students claim that a contract action can be based on breach of representation contained in the student handbook because the handbook created a contract, we rejected that contention in *Tran v. State System of Higher Education,* 986 A.2d 179 (Pa.Cmwlth.2009), where we explicitly held that a student handbook of a public university does not create a contract between the public university and the student. *See also Crabtree v. California University of Pennsylvania,* 147 Pa.Cmwlth. 1, 606 A.2d 1239, 1240 n. 3 (1990). Because community colleges are public colleges, a contract action cannot be maintained on an alleged breach of a student handbook or catalog.

As to whether representations by the Community College staff can create a contract between the parties, ignoring that contracts with bodies have to be entered in compliance with statutory formalities, representations made by staff members are not sufficient to bring a contract claim. In *Matarazzo v. Millers Mutual Group, Inc.,* 927 A.2d 689 (Pa.Cmwlth.2007), we addressed whether a contract claim could be brought based upon a governmental employee's representation on which a party relied causing them injury. While we agreed that an action could be maintained for private parties, it could not be used to turn negligent actions by governmental employees into contract actions to avoid governmental immunity. If we were to hold otherwise, any guidance counselor who foolishly and negligently promised to a student that if he or she took a course and did well, he or she would get into Harvard, and then the student would take those courses and do well but did not get into Harvard, could bring an action in contract.

Finally, in footnote 16, the majority holds that it sees "nothing in the language or structure of the CPL to suggest a legislative intent to insulate local agencies engaged in trade or commerce from responsibility for unfair or deceptive practices which cause a loss to Pennsylvania Consumers." First, I disagree because this issue was never raised or briefed by any of the parties, and we should not address it *sua sponte.* Second, I disagree with the substance of the holding. The reason that I would hold that the CPL does not apply is not that the Community College is not a person but that is not engaged in the conduct of a "trade or commerce." "Trade or commerce" is mercantile activity in which the person engaged in that business is doing so for private profit which could motivate unfair or deceptive practices for private gain or, more accurately, private greed. All of the provisions of the CPL are aimed at private businesses. The Community College is not engaged in the

---

**3.** Added by the Act of November 24, 1976,     P.L. 1166.

conduct of "trade or commerce" but is carrying out a public responsibility with tax dollars to provide students with an affordable education to citizens of the Commonwealth. In other words, when a governmental entity is carrying out a public duty, it is not engaged in the conduct of a trade or commerce, but in the conduct of government. If this issue was before us, I would hold that the CPL does not apply.

For the foregoing reasons, I dissent.

## DISSENTING OPINION by Judge LEAVITT.

The majority holds that the Community College of Beaver County is a "person" that can be held liable for treble damages under the Unfair Trade Practices and Consumer Protection Law (Consumer Protection Law) [1] for engaging in unfair trade practices. I disagree that the Commonwealth of Pennsylvania, its agencies, political subdivisions and state-created institutions of education are engaged in a type of "trade or commerce" that is regulated by the Consumer Protection Law. Accordingly, I must, respectfully, dissent.

Here, a group of students seek damages because they took police officer training courses based, in part, on the representations of the Community College that its program was certified. The college lost its certification, and the students lost the benefit of their bargain. The students may be entitled to relief, but not under the Consumer Protection Law. To reach this conclusion, I look to the words of the Consumer Protection Law.

The students seek redress under Section 9.2(a) of the Consumer Protection Law, which states:

**9.2  Private actions**

(a) *Any person who purchases or leases goods or services primarily for per-sonal, family or household purposes* and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, *may bring a private action to recover actual damages* or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

Section 9.2(a) of the Consumer Protection Law, 73 P.S. § 201–9.2(a), *added by* Act of November 26, 1976, P.L. 1166 (emphasis added). The students assert they are "persons" who purchased "services" for "personal purposes" and thereafter suffered a loss of money as a result of the unlawful act of another "person," *i.e.*, the Community College. The Consumer Protection Law defines "person" as follows:

"Person" means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and *any other legal entities.*

Section 2 of the Consumer Protection Law, 73 P.S. § 201–2 (emphasis added). The question is whether the words "any other legal entities" meant to sweep up the Commonwealth, its agencies and Pennsylvania municipal corporations within the reach of "person." There are several reasons why I believe that it does not.

First, the General Assembly knows how to draft legislation to define "person" to designate a Commonwealth agency or po-

---

1. Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. §§ 201–1—201–9.3.

litical subdivision. For example, The Controlled Substance, Drug, Device and Cosmetic Act [2] defines "person" as follows:

> "Person" means individual, corporation, *government or governmental subdivision or agency,* business trust, estate, trust, partnership or association, *or any other legal entity.*

Section 2 of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–102(b) (emphasis added). Likewise, Section 103 of the Solid Waste Management Act,[3] defines a "person" as

> [a]ny individual, partnership, corporation, association, institution, cooperative enterprise, *municipal authority, Federal Government or agency, State institution and agency (including, but not limited to, the Department of General Services and the State Public School Buildings Authority),* or any other legal entity whatsoever which is recognized by law as the subject of rights and duties.

35 P.S. § 6018.103 (emphasis added).[4] If the General Assembly had intended to include Commonwealth agencies and community colleges within the ambit of the Consumer Protection Law, it would have so stated. It did not do so in Section 2 of the Consumer Protection Law.

Second, the statutory construction maxim *ejusdem generis* must inform our construction of "any other entity." This doctrine "mandates that general expressions used in a statute are restricted to things and persons similar to those specifically enumerated in the language preceding the general expressions." *Petty v. Hospital Service Association of Northeastern Pennsylvania,* —— Pa. ——, ——, 23 A.3d 1004, 1009 (2011) (citation omitted). In Section 2, the listed entities are private parties, *i.e.,* "natural persons, corporations, trusts, partnerships [and] incorporated or unincorporated associations." 73 P.S. § 201–2. A Commonwealth agency created by the legislature to administer and enforce a statute bears no similarity to the private parties listed in Section 2. Any "other legal entity" might include, for example, a limited liability company, which is a type of legal entity formed to conduct business that is not named in Section 2; indeed, this type of legal entity did not exist at the time the Consumer Protection Law was enacted in 1976.[5]

It makes sense that the Commonwealth and its progeny were intentionally omitted from the definition of "person," because the Consumer Protection Law regulates "trade or commerce," which does not describe governmental activities, as noted by Judge Pellegrini in his dissent.[6] Section 3 states, in relevant part, as follows:

---

**2.** Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101–780–144.

**3.** Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

**4.** There are many more examples. *See, e.g.,* Section 4(a) of the Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 954(a) (defining "person" to include "the Commonwealth of Pennsylvania, and all political subdivisions, authorities, boards and commissions thereof" . . .); Section 1 of the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. § 691.1 (defining "person" as "any agency, instrumentality or entity of Federal or State Government . . ."); and Section 3 of the Air Pollution Control Act, Act of January 8, 1960, P.L. (1959) 2119, 35 P.S. § 4003 (defining "person" as an "agency of the Commonwealth or Federal Government . . .").

**5.** The Limited Liability Company Law of 1994, Act of December 7, 1994, P.L. 703, *as amended,* 15 Pa.C.S. §§ 8901–8998, authorizes the formation of a limited liability company in Pennsylvania.

**6.** State parks offer overnight campsites at state parks, and so do private campgrounds. This does not mean that the Commonwealth

*Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce* as defined by subclauses (i) through (xxi) or clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful.

Section 3 of the Consumer Protection Law, 73 P.S. § 201–3 (emphasis added). The Commonwealth, its agencies and municipal corporations are not engaged in "trade or commerce." The Community College is a public institution, funded, in part, by the Commonwealth and was not created to "compete" with private educational institutions, whether non-profit or for-profit. Rather, the Community College was created to fill a need not filled by other institutions.

This Court has held that the Commonwealth is a "person" capable of bringing "a private action" to recover treble damages under Section 9.2 of the Consumer Protection Law. *See Commonwealth v. TAP Pharmaceutical Products, Inc.,* 885 A.2d 1127, 1143 (Pa.Cmwlth.2005) *(TAP II ).* I agree with the majority that if the Commonwealth or a local agency is a person for purposes of being a plaintiff under the Consumer Protection Law, then it follows that either must also be a "person" for purposes of being a defendant. Stated otherwise, the word "person" must have one meaning for all purposes of the statute. However, I believe we erred in *TAP II* in holding that the Commonwealth was a "person" for purposes of being a plaintiff in a Section 9.2 action. We should overrule this portion of the decision.

In *TAP II,* the Attorney General filed suit under Section 9.2 against a number of pharmaceutical companies, asserting that they had engaged in unfair and deceptive marketing practices for the purpose of overcharging consumers for their drug products. To bring a "private action" under Section 9.2, the plaintiff "person" must have purchased the drugs for "personal, family or household purposes." 73 P.S. § 201–9.2. We glossed over that point, holding that the "Commonwealth" could bring a "private" action against the named pharmaceutical defendants, even though the Commonwealth did not purchase drugs for "personal, family or household purposes." 73 P.S. § 201–9.2. We also overlooked the title of Section 9.2, which creates a "private action," and the fact that an action brought by the Attorney General in the name of the Commonwealth cannot be a "private action." Instead, we accepted the Attorney General's argument that because the Commonwealth acted in a representative, or *parens patriae* capacity, the Commonwealth was a "person" capable of bringing a "private action" under Section 9.2 to recover damages. There are several flaws to our holding in *TAP II.*

The central flaw is that the Attorney General does not have general *parens patriae* authority.[7] The powers of the Attorney General begin with the Pennsylvania Constitution, and it states, in relevant part, as follows:

> An Attorney General shall be chosen by the qualified electors of the Commonwealth … [.] [H]e shall be the chief law officer of the Commonwealth and shall exercise such powers and perform such duties *as may be imposed by law.*

PA. CONST. art. IV, § 4.1 (emphasis added). The law that imposes those powers and duties is the Commonwealth Attorneys

---

has undertaken "trade or commerce" in the creation of its state park system.

7. *See also Pennsylvania Department of Banking v. NCAS of Delaware LLC,* 995 A.2d 422 (Pa.Cmwlth.2010) (Leavitt, J., concurring).

Act, Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. §§ 732–101—732–506. Further, that act is the exclusive source of the Attorney General's powers; stated otherwise, the Attorney General's powers and duties have no basis in the common law, which is the source of the *parens patriae* doctrine.[8]

This was not always the case. Article IV, section 4.1 was added to the Pennsylvania Constitution by amendment in 1978. Prior to that amendment, the Attorney General was appointed by the governor and served as a member of the governor's cabinet as head of the Department of Justice. Pre–1978, the Attorney General's powers and duties were enumerated in The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §§ 51–732, and they were thought to be augmented by common law powers. In a landmark case, *Commonwealth ex. rel. Minerd v. Margiotti,* 325 Pa. 17, 188 A. 524 (1936), our Supreme Court reviewed the historic antecedents of the Attorney General's common law power and held that Pennsylvania's Attorney General

> *is clothed with the powers and attributes which enveloped Attorneys General at common law,* including the right ... to supersede and set aside the district attorney when in the Attorney General's judgment such action may be necessary.

*Id.* at 30–31, 188 A. at 530 (emphasis added).

The Attorney General's common law powers included the power to supersede a district attorney in a criminal matter and to intervene in charitable trust cases on behalf of the citizens of Pennsylvania. *See, e.g., Commonwealth v. The Barnes Foundation,* 398 Pa. 458, 467, 159 A.2d 500, 505 (1960) (holding that the Attorney General enjoys the common law power to participate in litigation involving charitable trusts).

In 1978, our Supreme Court overruled *Minerd,* finding "the reasoning in this line of decisions to be erroneous...." *Commonwealth v. Schab,* 477 Pa. 55, 60, 383 A.2d 819, 821 (1978). Accordingly, the Supreme Court held that the Attorney General lacked the power to supersede a district attorney in a criminal law enforcement matter. That same year, after *Schab* was issued, the voters adopted Article IV, section 4.1 of the Pennsylvania Constitution, which instituted the election of our Attorney General, replacing the selection by gubernatorial appointment.

Thereafter, the newly elected Attorney General attempted to supersede a district attorney in a criminal case, arguing that the holding in *Schab* was no longer viable in light of the constitutional amendment. Specifically, the Attorney General argued that the

> Commonwealth Attorneys Act is but one source of the Attorney General's powers, and that, moreover, the language of Article 4, section 4.1, of our state constitu-

---

8. The origin of the *parens patriae* doctrine can be traced to medieval England. Conceptually, the doctrine is derived from the king's royal prerogative to act as the guardian of an individual unable to protect his own interests. The attorney general, at common law, was the chief legal representative of the sovereign in the courts and was the only officer who could prosecute on behalf of the people in order to protect the interests of the crown. As in England, a colonial attorney general, acting as the chief legal officer of a British colony, enjoyed broad common law power to bring suit in *parens patriae* on behalf of colonial citizens. Jay L. Himes, *State Parens Patriae Authority: The Evolution of the State Attorney General's Authority* 1–2, 18–19 (The Institute for Law and Economic Policy Symposium paper, Apr. 23, 2004), *available at* http://www.abanet.org/antitrust/at-committees/at-state/pdf/publications/other-pubs/parens.pdf.

tion and that of the Act evidence *an intent to retain the common law powers* of the Attorney General.

*Commonwealth v. Carsia,* 512 Pa. 509, 512, 517 A.2d 956, 957–958 (1986) (emphasis added). Our Supreme Court rejected the argument that the Attorney General had any powers not specified in statutory law.

Explaining the meaning of Article IV, section 4.1 of the Pennsylvania Constitution, the Supreme Court explained:

> In our view, the use of the language "as may be imposed" clearly shows an extension of power to the legislature to statutorily define and regulate the powers and duties of the Attorney General.
>
> The General Assembly utilized that grant of constitutional powers in 1980, and enacted the Commonwealth Attorneys Act. That Act made it clear that *the powers of the state Attorney General are* no longer an emanation from some bed of common law precepts, but are *now strictly a matter of legislative designation and enumeration.*

*Id.* at 513, 517 A.2d at 958 (emphasis added). In sum, under the Pennsylvania Constitution, the powers of the Attorney General are "strictly a matter of legislative designation and enumeration." *Id.*

**9.** It states, in relevant part:

> The Attorney General shall represent the Commonwealth and all Commonwealth agencies and upon request, the Departments of Auditor General and State Treasury and the Public Utility Commission in any action brought by or against the Commonwealth or its agencies, and *may intervene in any other action, including those involving charitable bequests and trusts* or the constitutionality of any statute. The *Attorney General shall represent the Commonwealth and its citizens* in any action brought for violation of the antitrust laws of the United States and the Commonwealth.
> 71 P.S. § 732–204(c) (emphasis added).

In reaching this conclusion, the Supreme Court relied upon a report of the Joint State Government Commission that had been prepared on the legislation needed to establish the scope and powers of the new Office of Attorney General. The Commission's final report explained that

> *[l]egislation* enacted by the General Assembly *is the exclusive source of the powers and duties of the elected Attorney General* pursuant to Article IV, Section 4.1. . . .

Joint State Gov't Comm'n, Office Of Elected Attorney General, Final Report 4 (1978). The legislation that was the subject of the Joint State Government Commission's report became the Commonwealth Attorneys Act.

The Commonwealth Attorneys Act has limited the Attorney General's *parens patriae* power, *i.e.,* the power to initiate actions on behalf of citizens, to two circumstances. First, the Attorney General may intervene in charitable matters on behalf of citizens. 71 P.S. § 732–204(c).[9] Second, the Attorney General may represent "the Commonwealth *and its citizens* in any action brought for violation of the antitrust laws of the United States and the Commonwealth." *Id.* (emphasis added).[10] That is it.

**10.** At the time the Joint State Government Commission filed its report, the General Assembly was considering 1977 House Bill 845, intended to create intrastate antitrust enforcement authority for the Attorney General. Joint State Gov't Comm'n, Office Of Elected Attorney General, Final Report 11 (1978). The bill died in committee and never passed the House. Pennsylvania General Assembly, Bill Information, Regular Session 1977–1978, House Bill 845, *available at http://www.legis. state.pa.us/cfdocs/billinfo/billinfo.cfm?syear= 1977&sind=0&body=H&type=B&BN=0845.*

The Commonwealth has not yet enacted a state antitrust statute. In the meantime, the Attorney General may enforce federal antitrust laws in a representative capacity.

In *TAP II*, this Court considered none of this antecedent history. Summarily, we relied upon the *parens patriae* analysis of *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), in which the United States Supreme Court held that, generally, a state may not sue on behalf of its citizens without showing that a separate sovereign interest will also be served. *Id.* at 607, 102 S.Ct. 3260. *Snapp* limits a state's *parens patriae* powers, which are assumed to exist. *Snapp* does not, and cannot, invest a state with *parens patriae* authority or require it to be exercised. This question can only be determined by each state in accordance with its own constitution.

In Pennsylvania, our Constitution has limited the Attorney General's powers to those established by "legislative designation and enumeration." *Carsia*, 512 Pa. at 513, 517 A.2d at 958. The legislature has authorized the Attorney General to bring

suit "on behalf of citizens," a *parens patriae* power, but only for violations of federal antitrust laws.[11] The Commonwealth Attorneys Act does not authorize the Attorney General to seek damages "on behalf of citizens" for violation of the Consumer Protection Law.

Further, the General Assembly has created a specific role for the Attorney General with respect to the Consumer Protection Law. Section 4 of the Consumer Protection Law authorizes the Attorney General to "bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of [an unlawful] method, act or practice." 73 P.S. § 201–4.[12] That injunction may include an order of restitution. Section 4.1 of the Consumer Protection Law, 73 P.S. § 201–4.1.[13] Finally, a "person" that violates the injunction may be ordered to pay civil penalties. Section 8 of the Consumer Protection Law, 73 P.S. § 201–8.[14]

11. Should Pennsylvania ever enact a state antitrust law, the Attorney General's power to bring suit on behalf of citizens will extend to that law as well.

12. Section 4 of the Consumer Protection Law provides:

Whenever the Attorney General or a District Attorney has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice.
73 P.S. § 201–4.

13. Section 4.1 of the Consumer Protection Law states:

Whenever any court issues a permanent injunction to restrain and prevent violations of this act as authorized in section 4 above, the court may in its discretion direct that the defendant or defendants restore to any

person in interest any moneys or property, real or personal, which may have been acquired by means of any violation of this act, under terms and conditions to be established by the court.
73 P.S. § 201–4.1. Section 4.1 was added by the Act of November 24, 1976, P.L. 1166.

14. Section 8 of the Consumer Protection Law provides:

(a) Any person who violates the terms of an injunction issued under section 4 of this act or any of the terms of an assurance of voluntary compliance duly filed in court under section 5 of this act shall forfeit and pay to the Commonwealth a civil penalty of not more than five thousand dollars ($5,000) for each violation. For the purposes of this section the court issuing an injunction or in which an assurance of voluntary compliance is filed shall retain jurisdiction, and the cause shall be continued; and, in such cases, the Attorney General, or the appropriate District Attorney, acting in the name of the Commonwealth of Pennsylvania, may petition for recovery of civil penalties and

Notably absent from the Attorney General's enforcement authority is the power to recover damages on behalf of individual consumers. Absent this legislative "designation and enumeration," it must be concluded that the Attorney General lacks authority to bring a "private action" under Section 9.2 in the name of the Commonwealth on behalf of private citizens. That conclusion could not be clearer given our Supreme Court's holding in *Carsia*, 512 Pa. 509, 517 A.2d 956, and we erred in otherwise holding in *TAP II*. In sum, a "person" is not the Commonwealth acting in a representative capacity.

The majority's construction of "person" has wide-reaching implications. It would allow the Attorney General to initiate a Section 4.1 injunction action against a "person" that is a Commonwealth agency such as, for example, the Liquor Control Board. This shows the absurdity of construing the statute's definition of "person" to mean a government agency or institution, as either a plaintiff or a defendant. The Consumer Protection Law devolves into a program of government feeding on itself.

There are cogent reasons why the Consumer Protection Law did not designate a Commonwealth agency or municipal corporation as a "person" in Section 2. Commonwealth agencies and municipal corporations do not need the protections of the Consumer Protection Law because they are not like private consumers. An individual procurement officer may fall sway to exaggerated claims featured in Superbowl advertisements, but his impressionability is irrelevant. State and local agencies are constrained in how they make purchases. The Commonwealth purchases goods or services through competitive bidding procedures governed by the Commonwealth Procurement Code, 62 Pa.C.S. §§ 101–4604. Likewise, municipal corporations make purchases only in accordance with competitive bidding. *See, e.g.*, Section 3102(a) of the Second Class Township Code, 53 P.S. § 68102(a).[15]

Nor is there an obvious necessity to hold a Commonwealth agency or municipal corporation liable for its actions under the Consumer Protection Law. Persons acting under color of state law can be held accountable for their deceitful acts under 42

---

any other equitable relief deemed needed or proper.

(b) In any action brought under section 4 of this act, if the court finds that a person, firm or corporation is wilfully using or has wilfully used a method, act or practice declared unlawful by section 3 of this act, the Attorney General or the appropriate District Attorney, acting in the name of the Commonwealth of Pennsylvania, may recover, on behalf of the Commonwealth of Pennsylvania, a civil penalty of not exceeding one thousand dollars ($1,000) per violation, which civil penalty shall be in addition to other relief which may be granted under sections 4 and 4.1 of this act. Where the victim of the wilful use of a method, act or practice declared unlawful by section 3 of this act is sixty years of age or older, the civil penalty shall not exceed three thousand dollars

($3,000) per violation, which penalty shall be in addition to other relief which may be granted under sections 2 and 4.1 of this act.

73 P.S. § 201–8.

15. Act of May 1, 1933, P.L. 103, 53 P.S. § 68102, added by the Act of November 9, 1995, P.L. 350. Section 3102(a) of the Second Class Township Code identifies the contracts that must be awarded through a competitive bidding process, stating in relevant part:

All contracts or purchases in excess of the required advertising amount of ten thousand dollars ($10,000), except those specifically excluded, shall not be made except with and from the lowest responsible bidder after due notice in one newspaper of general circulation in the township.

U.S.C. § 1983.[16] A loss of property without due process violates the United States Constitution and can result in monetary damages. Commonwealth agencies and municipal corporations, unlike private actors, must conduct their "business" in an open and transparent manner. Unlike a private company, they must provide access to their records that relate to their activities. *See* Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104. Is accountability under the Consumer Protection Law also needed? [17]

In sum, "person" as defined in the Consumer Protection Law does not include a Commonwealth agency or state institution or municipal corporation of any type.[18] To stretch the Consumer Protection Law in that fashion will lead to mischief that is only as wild as the imagination. I defer to Judge Brobson's dissenting opinion for a more thorough discussion of the ramifications of the majority's interpretation of the Consumer Protection Law.

For these reasons, I would reverse the order of the trial court and grant the Community College's motion for partial summary judgment.

### DISSENTING OPINION by Judge BROBSON.

I commend my colleagues who penned opinions in this matter for their thorough and thoughtful analyses of the issues before this Court. I write, however, to take a more holistic approach to addressing the general question before this Court—namely, whether governmental entities,[1] as a matter of law, are subject to suit under the Unfair Trade Practices and Consumer Protection Law (CPL).[2] In reviewing the

---

53 P.S. § 68102(a).

**16.** Section 1983 provides

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

**17.** Even if it were needed, it is for the General Assembly to fill that need.

**18.** The Statutory Construction Act of 1972 defines "person" for the purpose of "any stat-

ute finally enacted after September 1, 1937, unless the context clearly indicates otherwise." 1 Pa.C.S. § 1991. It defines "person" as follows:

"**Person.**" Includes a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person.

*Id.* In the Consumer Protection Law, the legislature chose not to follow the default definition of "person" set forth in the Statutory Construction Act of 1972. Instead, it added "natural person," deleted "government entity" and did not add "Commonwealth." These must be presumed conscious decisions.

**1.** In *Community College of Allegheny County v. Seibert,* 144 Pa.Cmwlth. 616, 601 A.2d 1348 (1992), *aff'd,* 533 Pa. 314, 622 A.2d 285 (1993), this Court held that community colleges are local agencies for purposes of governmental immunity. Notwithstanding the majority's conspicuous references to *local* agencies throughout its opinion, the majority's reasoning and result extend with equal force to Commonwealth agencies.

**2.** Act of December 16, 1968, P.L. 1224, *as amended,* 73 P.S. §§ 201-1 to -9.3.

statute as a whole, I conclude that they are not. Thus, I must respectfully disagree with the majority and concurring opinions.

If public agencies can be held liable under the CPL, as the majority reasons, the implications of the majority's holding are far reaching. Under the Liquor Code,[3] for example, the Pennsylvania Liquor Control Board (LCB) engages exclusively in the sale and distribution of alcohol in the Commonwealth. This activity falls within the definition of "trade" and "commerce" in the CPL.[4] Under the majority's analysis, a private citizen of the Commonwealth who purchases alcohol for personal, family, or household use could sue the LCB under Section 9.2(a) of the CPL, 73 P.S. § 201–9.2 (creating private right of action),[5] and seek the relief available under that section, which includes, *inter alia,* treble damages, costs, and attorneys' fees.

Under the Real Estate Tax Sale Law,[6] county tax claim bureaus are authorized to advertise and sell real property, an activity which falls within the CPL's definition of "trade" and "commerce." Under the majority's analysis, a private citizen of the Commonwealth who purchases real estate at a tax upset sale or judicial sale could bring suit against the county tax claim bureau that advertised and sold the real property under Section 9.2(a) of the CPL and seek treble damages, costs, and attorneys' fees.

There are many more instances where state and local agencies engage in "trade" and "commerce" as these terms are strictly defined in the CPL. Because our state and local governments are authorized to engage in such activities, I am loathe to construe the CPL in such a way as to create a private right of action against government agencies in the absence of clear legislative intent to support such a construction. I do not believe the General Assembly's use of the phrase "any other legal entities," which follows a list of clearly *private* concerns, in the definition of "person" in the CPL[7] is a sufficient expression of legislative intent to subject public entities to private lawsuits, or any other legal action,[8] under the CPL. To the contrary, I believe the doctrine of *ejusdem generis,* most recently applied by our Supreme Court in *Petty v. Hospital Service Association of Northeastern Pennsylva-*

---

3. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–102 to 10–1001.

4. Section 2(3) of the CPL, provides, *inter alia:* **"Trade"** and **"commerce"** means the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth. 73 P.S. § 201–2(3) (emphasis in original).

5. Of course, this private citizen would need to state a claim under the CPL as a matter of law. In light of footnote 16 to the majority's opinion, however, I find it necessary to state the obvious.

6. Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101 to .803.

7. "Person" is defined in the CPL as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities." Section 2(2) of the CPL, 73 P.S. § 201–2(2).

8. If the majority's analysis stands, for example, the Attorney General could bring a suit to enjoin the LCB or a county tax claim bureau from engaging in acts or practices deemed unlawful under the CPL. Section 4 of the CPL, 72 P.S. § 201–4. If the LCB or county tax claim bureau violates such an injunction, the Attorney General could petition a court for an order restraining the LCB and the county tax claim bureau from further doing business.

*nia,* — Pa. —, 23 A.3d 1004 (2011),[9] applies and restricts our interpretation of "any other legal entities" to any other *private* legal entities.[10]

Finally, construing "any other legal entity" in such a way as to authorize private litigants to bring suits under the CPL against public entities violates the rule of statutory construction that requires us to presume that the General Assembly does not intend to favor private interests over the public interest. 1 Pa.C.S. § 1922(5). The majority's decision in this case, which provides private citizens access to public coffers to remedy purely private injuries under the CPL, ignores this presumption.

For these reasons, I would reverse the trial court.

## CONCURRING OPINION by Judge McCULLOUGH.

I concur in the result reached by the Majority. I agree that the Community College of Beaver County (College), as a legal entity, falls within the definition of "person" set forth at section 2(2) of the Unfair Trade Practices and Consumer Protection Law (CPL)[1] and is subject to private actions brought under section 9.2 of the CPL.[2] I also agree with the Majority's conclusion that the claims set forth in the complaint sound in contract, rather than tort. However, I respectfully diverge from the focus of the Majority's analysis.

The instant action was filed by a group of students (Students) who were enrolled in the College's police academy training program (Academy) and had completed a substantial portion of their training when the Academy lost its Act 120 certification.[3] As a consequence, the credits Students earned are likely of little use towards obtaining Act 120 certification necessary to obtain employment in the field of law enforcement. Students filed a two-count complaint against the College; relevant here, Students allege that the College committed numerous unfair and deceptive acts and practices in violation of the CPL.[4]

The threshold question raised in this appeal is whether the College is subject to

---

**9.** *See Summit House Condominium v. Commonwealth,* 514 Pa. 221, 227, 523 A.2d 333, 336 (1987) ("The doctrine of *ejusdem generis* mandates that '[g]eneral expressions used in a statute are restricted to things and persons similar to those specifically enumerated in the language preceding the general expressions.'").

**10.** Indeed, if the phrase "any other legal entities" is so broad that it encompasses *all* legal entities (private and public), the majority opinion fails to explain the General Assembly's express inclusion of "corporations, trusts, partnerships, incorporated or unincorporated associations"—all of which are legal entities—between "natural persons" and "any other legal entities" in the definition of "person." The majority's construction of the definition of "person" in Section 2(2) of the CPL renders the language identifying specific private legal entities mere surplusage. Such a construction is to be avoided. 1 Pa.C.S. § 1922(2) (presumption "[t]hat the General Assembly intends the entire statute to be ef-

fective and certain"); *Walker v. Eleby,* 577 Pa. 104, 123, 842 A.2d 389, 400 (2004) (holding that no provision of statute shall be "reduced to mere surplusage").

**1.** Act of December 16, 1968, P.L. 1224, *as amended,* 73 P.S. § 201-2.

**2.** Added by the Act of November 24, 1976, P.L. 1166, 73 P.S. § 201-9.2.

**3.** The Municipal Police Officers Education and Training Act, 53 Pa.C.S. §§ 2161-70, is informally known as "Act 120."

**4.** Students' complaint alleges "some fairly egregious failures on the part of the College," as our Supreme Court described them, including the failure of Academy instructors to be properly certified to teach various courses and the Academy's failure to accurately document student examination scores. *Meyer v. Community College of Beaver County,* 606 Pa. 539, 541-42, 2 A.3d 499, 500 (2010).

private actions brought under section 9.2 of the CPL. In deciding this issue, I believe the Majority considers questions neither raised nor necessary to decide for purposes of this appeal. In contrast to the Majority's approach, I would confine our analysis to the issues raised by the parties.

The College asserts that it is not subject to the CPL, based in part on the assertion that it is not a "person," which term is defined by section 2(2) of the CPL as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities." 73 P.S. § 201–2(2). Like the Majority, I disagree.

The College contends that, as a general principle, the word "person" does not include a government entity unless the same is expressly included in the statutory definition.[5] In support of this argument, the College relies on decisions in other jurisdictions, particularly, *Leonard v. Masterson*, 70 A.D.3d 697, 896 N.Y.S.2d 358 (2010). The petitioner in *Leonard* owned property surrounded by land owned by the county. The petitioner sought to establish a private road over part of the county's land pursuant to a state statute that essentially provides for a private condemnation proceeding. (Highway Law §§ 300 et seq.) The issue on appeal in *Leonard* was whether the legislature intended to provide that land owned by a government entity may be the subject of such a proceeding. The court observed that the statutory language at issue referred to a "person or persons" through whose land the private road is to pass. The court relied on previous New York decisions to affirm the denial of the petition, observing "it has long been the law ... that the term 'person' generally does not include a government entity unless a statutory definition expressly includes that governmental entity within the meaning of the term." *Id.* at 360.

I agree with the Majority that the holding in *Leonard* is inapplicable here; indeed, I believe that the statute, facts, and policy concerns in *Leonard* are so distinguishable as to render any reference to that case of no value.

More important, no Pennsylvania court has issued a similarly explicit holding. Relying on *Huffman v. Borough of Millvale*, 139 Pa.Cmwlth. 349, 591 A.2d 1137 (1991), the College claims that our courts have applied a substantially comparable principle in construing a statutory definition. However, I believe that the College's reliance on *Huffman* is misplaced. *Huffman* involved an injured borough police officer who filed a complaint alleging that the borough failed to compensate him for holiday, vacation and sick leave benefits. On appeal, this Court first addressed the trial court's determination that the police officer had no cause of action under the Wage Payment and Collection Law (Wage Law)[6] because the Wage Law does not apply to municipalities. At issue was the Wage Law's definition of "employer," which includes "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing people in this Commonwealth."[7] We noted that

---

5. A community college is a local governmental agency. *Bucks County Community College v. Bucks County Board of Assessment Appeals*, 147 Pa.Cmwlth. 505, 608 A.2d 622 (1992); *Community College of Allegheny County v. Seibert*, 144 Pa.Cmwlth. 616, 601 A.2d 1348 (1992).

6. Act of July 14, 1961, P.L. 114, *as amended*, 43 P.S. §§ 260.1–260.45.

7. Section 2.1 of the Wage Law, added by the Act of July 14, 1977, P.L. 82, 43 P.S. § 260.2a.

"boroughs" are not included within the statutory definition of an "employer" under the Wage Law, and we relied on the legal maxim *expressio unius est exclusio alterius* to affirm the trial court's conclusion, reasoning as follows:

> Municipal corporations such as the Borough are not included within the definition of "employer," and we, as an appellate court, cannot expand the definition of "employer" to include them. There is a clear distinction between municipal and private corporations and, if the legislature wished that municipal corporations be covered by the Law, it could have easily included them. We apply the legal maxim, *expressio unius est exclusio alterius* which directs that the mention of a specific matter in a statute implies the exclusion of others not mentioned. *Samilo v. Pennsylvania Insurance Department*, 98 Pa.Commonwealth Ct. 232, 510 A.2d 412 (1986).

*Huffman*, 591 A.2d at 1139 (footnote omitted). Subsequently, in *Philipsburg–Osceola Education Association v. Philipsburg–Osceola Area School District*, 159 Pa. Cmwlth. 124, 633 A.2d 220, 223 (1993), we relied on our analysis in *Huffman* to hold that a school district was not an employer under the Wage Law. ("The legislature could have easily included municipal corporations or, for that matter, school districts under its definition of employer, but it did not. We therefore decline to extend the Wage Law to school district employers.")

These cases have been cited for the propositions that: (1) the Wage Law does not apply to municipal employees; and (2) the court will not supply a missing term in a statute. Neither case has been cited for the principle that a statute does not apply to a government entity unless the statute specifically so provides. Notably, neither is part of a "line of cases" holding that the legislature did not intend to include governmental entities within a listing of persons and entities which might technically encompass them where it did not expressly include the governmental entity in such listing.

The College cites *In re Keifer*, 430 Pa. 491, 243 A.2d 336 (1968), for the established principle of statutory construction that "an act does not deprive the Commonwealth of any prerogative, right or property, as would a statute of limitations, unless the Commonwealth is specifically named therein or unless an intention to include the Commonwealth is necessarily implied. When the act is an expression of "public policy," however, the general rule does not apply." *Id.* at 495, 243 A.2d at 339 (citations omitted). *Keifer* was an eminent domain proceeding that addressed whether a statute of limitations barred the state from accepting a dedication of land. Concluding that the statute was not an expression of public policy, the court in *Keifer* held that it did not apply against the Commonwealth. The College also relies on the decision in *Hoffman v. Pittsburgh*, 365 Pa. 386, 398, 75 A.2d 649, 654 (1950) ("It is axiomatic that a statute is never presumed to deprive the state of any prerogative, right, or property unless the intention to do so is clearly manifest, either by its express terms or necessary implication"). The court in *Hoffman* held that an ordinance adopted by the City of Pittsburgh pursuant to a statute did not authorize the City to acquire a fee simple title in property owned by the Commonwealth.

Both of these cases are factually distinguishable from the present matter in an important respect: they involved the status of the Commonwealth, rather than a local government agency. Moreover, the College cites no Pennsylvania case applying such a principle to other governmental entities. The distinction between sovereign and governmental entities is well rec-

ognized in Pennsylvania. For example, in affording protection from liability in actions sounding in tort, the legislature has separately provided for sovereign immunity and governmental immunity. *See* 42 Pa.C.S. §§ 8521–22 (related to sovereign immunity) and 42 Pa.C.S. §§ 8541–42 (related to governmental immunity). With respect to more general legal principles, I note that in *Northampton County Area Community College v. Dow Chemical,* 389 Pa.Super. 11, 566 A.2d 591 (1989), the court held that a community college could not assert the doctrine of *nullum tempus occurrit regi* (time does not run against the king) because the community college was not a commonwealth agency.

Accordingly, I agree with the Majority that the College's arguments are without merit. I also would note Students' response to the College's argument that the failure to explicitly include a community college or governmental entity in the CPL's definition of "person" precludes the application of the statute to those entities: the CPL expressly identifies those entities that are *not* subject to its provisions.

*Unlawful acts or practices; exclusions*

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful. The provisions of this act shall not apply to any owner, agent or employe of any radio or television station, or to any owner, publisher, printer, agent or employe of an Internet service provider or a newspaper or other publication, periodical or circular, who, in good faith and without knowledge of the falsity or deceptive character thereof, publishes, causes to be published or takes part in the publication of such advertisement.

73 P.S. § 201–3. As Students point out, the legislature did *not* include community colleges or governmental entities of any kind in this provision.[8]

Finally, I agree that a review of the averments establishes that the protection of bargained-for expectations is implicated in this case. Accordingly, I join the Majority in concluding that the College is not immune from Students' claims under the CPL.

However, I believe that the Majority unnecessarily considers issues that are in no way implicated in this appeal. To the extent that this part of the Majority's analysis is other than dicta, I am compelled to disagree.

Indeed, despite the "dual use" of the word "person" within the CPL, I believe it would be equally reasonable to conclude that the CPL's various provisions reflect a legislative intent to provide two distinct methods of ensuring that the purpose of the statute is met. Significantly, the purpose of the CPL is to protect the public from fraud and unfair or deceptive business practices. *Burke v. Yingling,* 446 Pa.Super. 16, 666 A.2d 288 (1995); *see also Commonwealth ex rel. Packel v. Ziomek,* 145 Pa.Cmwlth. 675, 352 A.2d 235, 238 (1976) ("The purpose of the General Assembly in passing the [CPL] was to protect citizens from unfair or deceptive practices, and the Legislature granted to the Attorney General the power to bring an action in the name of the Commonwealth for injunctive relief to protect the individual citizens...."). The CPL effectuates

---

**8.** This provision, identifying parties to whom the CPL does *not* apply, distinguishes the CPL from statutes that specifically include state and local entities in their definitions of "person."

this purpose by permitting certain private and public actors to bring suit. Thus, section 9.2 of the CPL authorizes private actions to recover actual damages,[9] and section 4 of the CPL authorizes the Attorney General or District Attorney to act in the public interest by bringing actions to restrain unlawful practices.[10][11] 73 P.S. §§ 201–4; 201–9.2; *see also Portis v. River House Associates, L.P.,* 498 F.Supp.2d 746 (M.D.Pa.2007) (observing that the fact that a public actor may bring suit ensures that the CPL's purpose can be realized even in those circumstances in which private actors can not file suit). Because the intent of the statute is to protect consumers, I question the Majority's analysis concerning the protection afforded to governmental agencies by a transaction-purpose filter set forth in section 9.2 of the CPL. (Majority op. at 595) Contrary to the Majority's view, I believe it would be reason-

able to interpret this language *as a restriction on parties who may bring a private action* under the CPL.

Moreover, holding that *all* governmental entities are persons permitted to bring an action under section 9.2 of the CPL—which specifically authorizes "a private action"—overlooks the very meaning of the word "private," which is "[r]elating or belonging to an individual, as opposed to the public or the government." Black's Law Dictionary 1315 (9th ed.2009).

Therefore, whereas the Majority *sua sponte* decides that all public entities are "persons" that can bring private actions and can be subject to suit under the CPL, I would simply hold that there is no legal basis to conclude that the College is not subject to the action brought by Students under section 9.2 of the CPL.[12]

---

9. In relevant part, section 9.2(a) of the CPL, 73 P.S. § 201–9.2(a) (emphasis added), states as follows:

   (a) Any person who purchases or leases goods or services *primarily for personal, family or household purposes* and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, *may bring a private action* to recover actual damages or one hundred dollars ($100), whichever is greater.

10. Section 4 of the CPL, 73 P.S. § 201–4, (emphasis added) provides in pertinent part:

    Whenever the Attorney General ... has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act to be unlawful, and that proceedings would be in the public interest, *he may bring an action in the name of the Commonwealth* against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

11. In *Weinberg v. Sun Company, Inc.,* 565 Pa. 612, 777 A.2d 442 (2001), our Supreme Court recognized that there is a distinction between

Commonwealth actions and private actions brought under the CPL. In *Weinberg,* purchasers of gasoline filed a consumer class action under the CPL, the consumer fraud laws of all other states, and common law, challenging the corporation's advertising of the gasoline and alleging that the corporation's advertisements induced consumers to purchase the gas when their vehicles did not need the high level of octane the gas contained. The trial court denied class certification on the basis that requirements of numerosity and common questions were not met and individual questions of fact predominated. The Superior Court reversed as to two of the four CPL claims. On further appeal, the issue before the Supreme Court involved the interpretation of section 9.2 of the CPL, permitting a private right of action. The court reviewed section 4 of the CPL, applicable to the attorney general, and section 9.2, governing a private action, and concluded that "Commonwealth actions and private actions are readily distinguishable." *Id.,* 565 Pa. at 617, 777 A.2d at 445.

12. Thus, unlike the dissenting view expressed by Judge Leavitt, I would not address the question of whether the Commonwealth of Pennsylvania, its agencies, political subdivi-

Finally, I note that the College raises the issue of treble damages to argue that Students' claims actually sound in tort. According to the College: section 9.2 allows for an award of treble damages; treble damages have been described as having "a strong punitive dynamic;" and punitive damages are not available for a breach of contract claim; therefore, Students' averments under the CPL are, in fact, tort claims. As previously indicated, I agree with the Majority that Students' averments sound in contract rather than tort. Having so concluded, I would dismiss outright the College's argument "raising the specter of" treble damages.

sions or any other governmental entity engages in "trade" or "commerce" that is regulated by the CPL. However, were this issue raised by either party on appeal, I believe that a statement to the effect that *no* such entity is engaged in trade or commerce, (Dissent, pages 1, 5), is factually and legally incorrect. (See the Pennsylvania Liquor Control Board's website directing users to its "retail page.") Also, I am not persuaded that a breach of contract claim against the College is actionable under 42 U.S.C. § 1983.

In addition, I do not believe that it is necessary to revisit our decision in *Commonwealth v. TAP Pharmaceutical Products, Inc.*, 885 A.2d 1127, 1143–44 (Pa.Cmwlth.2005), and consider again whether the Commonwealth has *parens patriae* standing to pursue damage claims of individuals under the CPL, where the issue in the present case is whether an action may be brought under the CPL against the College.

Finally, in answer to the query whether accountability under the CPL is needed, (Dissent, pages 608–09), I believe that the egregious conduct alleged here, *see* footnote 4, *infra*, suggests that such accountability is not redundant.

Moreover, in light of the specificity with which the phrase "unfair or deceptive acts or practices" is defined by section 2(4)(i)-(xxi) of the CPL, 73 P.S. § 201–2(4)(i)–(xxi), and particularly in light of the nature of the conduct described, e.g., passing off goods or services as those of another, I do not share the concerns expressed in Judge Brobson's dissent and do not expect that actions will regularly be brought against state or local agencies for the egregious conduct the CPL prohibits. More important, I would not characterize such acts by public entities as causing "purely private injury."